OPINION OF THE COURT
Vincent R. Balletta, J.
This is an action commenced by the plaintiff on his own behalf and purportedly on behalf of all other residential ratepayers of the Long Island Lighting Company. He brings the action against John F. Dyson, the Chairman of the Power Authority of the State of New York, the Power Authority of the State of New York (PASNY), Long Island Lighting Company (LILCO), and Grumman Corporation. Although named as a defendant, no causes of action are set forth against defendant Dyson.
*1004 Each of the defendants has now moved to dismiss so much of the complaint as affects them individually on the basis that it fails to state a cause of action. The plaintiff has cross-moved to consolidate this action with the Cohalan action (supra).
*1003 The complaint contains six causes of action. The first alleges that LILCO has neglected, failed and refused to purchase optimum amounts of low cost energy available from PASNY, and that in doing so, plaintiffs have been damaged in the sum of $5 billion by virtue of excessive rate charges. The second cause of action is directed against PASNY and alleges that the Authority has “failed to act pursuant to law” in having neglected and refused to enter into further contracts for the sale of inexpensive electrical power to LILCO. Plaintiff again claims damages of $5 billion. The third cause of action alleges that the Power Authority violated the law when it failed to purchase the Shoreham Nuclear Power Station which is currently under construction. Damages in the amount of $5 billion are again claimed. The fourth cause of action also is directed at the Power Authority and alleges that the Authority sells the bulk of its electric power to residents of northern and *1004 western New York, who therefore enjoy a “bonanza” when compared with the rates paid by the plaintiffs. This cause of action alleges that the Authority has acted in a discriminatory manner against LILCO ratepayers. Damages of $5 billion are again sought. The fifth cause of action, also directed against the Power Authority, alleges that the Authority acquired base load generating and transmission facilities in New York City and Westchester, which has resulted in a savings to ratepayers in these areas. The complaint states that this discriminates against the ratepayers of LILCO, and that as a result they have sustained $5 billion in damages. The sixth cause of action is substantially similar to the causes of action set forth in the companion case of Cohalan v Dyson (123 Misc 2d 997), which alleges that a certain sale of cheap electric power by the Authority to Grumman is illegal. Just as in the Cohalan case, the plaintiff seeks injunctive relief.
With respect to defendant LILCO, the only causes of action which affect it at all are the first and sixth causes of action. As to the first cause of action which alleges that LILCO violated the law in failing to enter into further contracts with PASNY to provide inexpensive power, the court initially notes that LILCO denies ever having failed or refused to buy any inexpensive power offered to it by PASNY. However, since this is a motion not for summary judgment but to dismiss the complaint for failure to state a cause of action, the allegations of the complaint must be deemed true. (Taylor v State of New York, 36 AD2d 878.)
Even assuming that LILCO had failed to purchase any additional inexpensive power offered by PASNY, there would still be no cause of action stated against the defendant. There is no statute which requires LILCO to purchase power from PASNY, and in his opposition papers to this motion, the plaintiff is silent and points to no law which would be violated by LILCO’s failure to purchase *1005 power from the Authority. Furthermore, even if an argument could be made that LILCO was negligent and acted in an imprudent manner in failing to purchase cheap power when available although not under any statutory mandate, such could certainly be presented to the Public Service Commission in connection with any request for an increase in LILCO’s rates, but it would not serve as the basis for an independent action at law against LILCO. The first cause of action of the complaint therefore lacks legal merit.
Turning to the sixth cause of action, as I indicated in my decision in Cohalan v Dyson (supra), LILCO clearly is nothing more than a bystander. LILCO is not a party to any agreement between PASNY and Grumman, is not supplying power, nor is it the recipient of any benefits from PASNY. Accordingly, the complaint is dismissed as to defendant LILCO.
With respect to the second cause of action which alleges that PASNY failed to enter into contracts to sell inexpensive power to LILCO, just as with the first cause of action, the court initially notes that PASNY denies such allegation. However, on this motion to dismiss for failure to state a cause of action, the allegations of the complaint will be deemed true. In connection with this cause of action, the plaintiff claims that section 1001-a of the Public Authorities Law requires PASNY to take steps to deter further extraordinary increases in rates for electric service in the metropolitan area of the City of New York, and that by virtue of such statutory mandate additional cheap power must be provided to LILCO.
Section 1001-a of the Public Authorities Law provides in pertinent part:
“The legislature hereby finds and declares that extraordinary circumstances, including excessive costs, shortages of supply, and the inflated price of fuel threaten the capacity to provide utility service essential to the continued safety, health, prosperity and well-being of the people of the metropolitan area of the city of New York and, by reason of the interconnection and interdependence of electric facilities, the reliability of such service throughout the *1006 state and require emergency action by the state and its agencies. It is therefore declared that:
“1. To preserve reliability of electric service in the metropolitan area of the city of New York and throughout the state and to assist in deterring further extraordinary increases in rates for electric service the authority should provide such supplemental electricity for such use in the metropolitan area of the city of New York as is consistent with continuing and maintaining the exemption of interest on authority bonds from the income tax imposed by the Internal Revenue Code of the United States and regulations and ruling thereunder.”
The statute is entitled “Emergency provisions for the metropolitan area of the City of New York”. It does not speak of the “greater” metropolitan area, and it is obvious that it was not meant to apply to the Counties of Nassau and Suffolk. Furthermore, the Governor’s memorandum issued at the time he signed section 1001-a into law, indicates that there was a power emergency in the City of New York and Westchester County due to the fact that Consolidated Edison, the public utility which supplies electricity to New York City and Westchester County, was experiencing significant financial problems. Specifically, the Governor stated:
“To the extent feasible, such power would be used for the benefit of consumers of electricity in Westchester County and New York City * * *
“The transactions authorized by the bills are a necessary and appropriate response to the severe, short-term cash situation in which Consolidated Edison now finds itself. The demise of Consolidated Edison would jeopardize the continued availability of dependable electric power supplies to the people and job producing businesses in its service area — New York City and most of Westchester County. The bills will help prevent that intolerable result.” (NY Legis Ann, 1974, p 387.)
It cannot be said that this statute, which was enacted to alleviate a utility emergency situation in the City of New York and the County of Westchester, can now be used by the plaintiff to require the Power Authority to sell *1007 additional power to LILCO. Any recourse should be to the New York State Legislature. Therefore, the second cause of action is dismissed.
The third and fifth causes of action deal with the Power Authority’s failure to acquire the partially completed Shoreham Nuclear Power Plant. The third cause of action merely states that the Authority has failed to act pursuant to law in not acquiring Shoreham, and the fifth cause of action alleges that the Authority has discriminated against the ratepayers of LILCO since it has already purchased two base load facilities, one in the City of New York and one in Westchester County. Although the plaintiff makes the barren statement that the failure to acquire Shoreham is a violation of law, he points to no statutory authority which compels the Authority to purchase the same. Furthermore, the purchases of Indian Point Plant No. 3 and the Charles Poletti Power Plant were specifically authorized and mandated by section 1005 of the Public Authorities Law. There is no such statutory mandate for Shoreham. Since section 1005 specifically permits PASNY to acquire completed or partially completed base load generating facilities only in New York City or Westchester County, the plaintiff cannot rely on any general statutory grant of powers by implication as the basis for acquiring a partially completed facility such as Shoreham, outside of New York City or Westchester County. In such a situation, the specific statutory language of limitation controls any general grant of power. (People v O’Donnell, 61 Misc 2d 194; Matter of Town of Hempstead [Newbridge Ave.], 50 Misc 2d 101.) Therefore, there cannot be any discrimination by the Authority against the ratepayers in taking this action. Accordingly, the third and fifth causes of action are dismissed.
The fourth cause of action alleges that PASNY discriminates against LILCO ratepayers when compared to ratepayers of northern and western New York, who enjoy the bulk of PASNY’s cheap electric power. In this regard, it should be noted that subdivision 5 of section 1005 of the Public Authorities Law provides that power generated from the Niagara River and St. Lawrence River hydroelectric projects is “primarily as for the benefit of the * * * state *1008 as a whole and particularly the domestic and rural consumers to whom the power can economically be made available”. The Power Authority contends, and it is not disputed, that the bulk of the power being provided to residents of northern and western New York State is as a result of contracts entered into long ago at a time when the economic transmission distance for electricity was a maximum of 150 miles from the project. These contracts will not expire until some time in 1985 and 1990, and it is not controverted that there is no other power available from these hydroelectric projects to be distributed to LILCO. The fact that most of these users reside in northern and western New York State does not mean that the Authority has discriminated against LILCO ratepayers, who were not within the original economic transmission distance. Accordingly, the fifth cause of action is dismissed.
Additionally, with respect to the fourth and fifth causes of action, which seek money damages for “discrimination”, while there are certain statutory provisions authorizing actions against officers or agents of municipalities and political subdivisions of New York State (e.g., General Municipal Law, § 51), there is no authority whatsoever for a plenary action seeking money damages against a political subdivision of New York State solely on the grounds of purported discrimination. This is not to say, however, that in an appropriate matter a party might not commence a proceeding so as to prohibit a governmental official from acting illegally, but a plenary action seeking money damages is not the appropriate vehicle.
Turning to the sixth cause of action, as I indicated earlier, this parallels the complaint in the companion case of Cohalan v Dyson (supra). Indeed, the injunctive relief sought is identical. However, just as I indicated in Cohalan v Dyson, the plaintiff does not come within the statutory definition of a high-load-factor manufacturer and thus does not come within the zone of interest to be protected by the statute. Therefore, the plaintiff lacks standing to assert this cause of action. (Matter of Bradford Cent. School Dist. v Ambach, 56 NY2d 158.) Accordingly, this sixth cause of action, and the complaint in its entirety, are dismissed.
*1009 Although the court has dismissed this complaint in its entirety, it can certainly understand the plaintiff’s concern and allegations that the electric ratepayers of Nassau and Suffolk County are being discriminated against and unfairly treated when compared to residents of other areas of this State. This might seem especially so where the Power Authority has purchased nuclear generating facilities in other localities. The proper remedy, however, is not by proceeding in this court, but rather, if appropriate, to seek to have the Legislature enact the necessary legislation authorizing and mandating that the Power Authority purchase the Shoreham facility. While this court takes no position as to whether it would be wise for the Legislature to enact such legislation, certainly seeking such relief in the proceeding before the court is unwarranted and unauthorized.
The motion to consolidate is denied as moot.